UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>STEVEN M. YAPLEE,<br><br>    Defendant. | Case No. 1:20-cv-01356-EPG (PC)<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 37) |

## I.   INTRODUCTION

Robert Washington ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  This case is proceeding on Plaintiff's Eighth Amendment claim against defendant Yaplee ("Defendant") for deliberate indifference to Plaintiff's serious medical needs based on allegations that Defendant failed to provide Plaintiff with treatment for an eye infection.  (ECF Nos. 7 & 9).[1]  The parties have consented to magistrate judge jurisdiction and the case has been assigned to the undersigned "for all further proceedings including trial and entry of judgment."  (ECF No. 24).

On March 4, 2022, Defendant filed a motion for summary judgment.  (ECF No. 37).  On July 7, 2022, Plaintiff filed his opposition.  (ECF No. 45).  On July 19, 2022, Defendant filed his reply.  (ECF No. 46).

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

Based on the evidence submitted by the parties, the Court finds that there is a genuine dispute of material fact regarding whether Plaintiff had an eye infection and whether Defendant was aware of the infection. Accordingly, the Court will deny Defendant's motion for summary judgment.

## II. SUMMARY OF CLAIM

This case is proceeding on Plaintiff's Eighth Amendment claim against Defendant for deliberate indifference to Plaintiff's serious medical needs based on allegations that Defendant failed to provide Plaintiff with treatment for an eye infection. (ECF Nos. 7 & 9).

In allowing Plaintiff's claim against Defendant to proceed past screening, the Court found as follows in its screening order:

> Plaintiff has alleged that, while Defendant initially provided care for his eye, after Plaintiff requested pain medication on July 7, 2016, Defendant's demeanor changed. Defendant responded to Plaintiff stating that Plaintiff was not displaying any symptoms consistent with the pain he was portraying. Defendant then called Plaintiff "a liar."
>
> At the next appointment, Plaintiff complained about his blurry vision and itchiness, and reiterated that he was suffering constant pain ranging from 7-8 out of 10. Defendant responded to Plaintiff, stating "all you fucking inmates are the same. How is it every inmate I get has severe pain but every normal patient I have has little to none?" He then became dismissive and walked out of the examination room.
>
> About a month later, after Plaintiff experienced extreme pain, he was provided emergency medical attention at North Kern State Prison. After examining Plaintiff, the doctor at North Kern State Prison coordinated an emergency appointment with Defendant because the doctor was extremely concerned about Plaintiff's eye infection. Defendant did not want to see Plaintiff, but Plaintiff was sent anyway. Upon Plaintiff's arrival at Defendant's office, Defendant became extremely agitated and began treating Plaintiff as a nuisance. Upon seeing Plaintiff, Defendant said "what the hell are you doing here? I told them not to send you." Defendant then provided Plaintiff with a two-second evaluation and verbally acknowledged that Plaintiff had an eye infection and needed antibiotics. After making this diagnosis, however, Defendant said to Plaintiff "you can get those from that asshole who sent you here," in reference to the antibiotics he needed to treat his infection. Defendant then told the transport officers to "get him the hell outta here" and walked out of the reception area.
>
> Defendant also failed to provide the necessary antibiotics when Plaintiff saw Defendant again on September 29, 2016. The necessary antibiotics were not

2

> provided until October 27, 2016, after Plaintiff stated that he was going to seek a second opinion.
>
> Based on the allegations in the complaint, the Court finds that Plaintiff has sufficiently alleged that Defendant knew that Plaintiff had a serious medical need, and that Defendant's response to the need was deliberately indifferent. Thus, the Court will allow Plaintiff's Eighth Amendment claim against Defendant for deliberate indifference to Plaintiff's serious medical needs to proceed past screening.

(ECF No. 7, pgs. 9-10).

Plaintiff did not bring any other claims.

### III.    SUMMARY JUDGMENT

    a. <u>Defendant's Motion (ECF No. 37)</u>

Defendant filed a motion for summary judgment on March 4, 2022. (ECF No. 37). Defendant moves for summary judgment, or in the alternative, partial summary judgment or summary adjudication, on the ground that Defendant "met the standard of care at all times for the management, care, and treatment of a patient with plaintiff's claimed injuries." (<u>Id.</u> at 2). Moreover, Defendant argues that he "was never deliberately indifferent to any serious medical need of plaintiff while Mr. Washington was under his care and treatment in the September 2015 to October 2016 time frame." (<u>Id.</u>).

According to Defendant, Defendant treated Plaintiff from September 17, 2015, through October 27, 2016. (ECF No. 37-2, p. 4). Defendant provides a summary of the care he allegedly provided to Plaintiff stemming from issues with his left eye. (<u>Id.</u> at 5-10).

As relevant here, according to Defendant, on June 13, 2016, Defendant operated on Plaintiff. "Specifically, Dr. Yaplee performed a pterygium removal with Mitomycin administration along with a graft and collagen shield to the left eye, which is the standard set of procedures he performs for a straightforward pterygium removal, as was the case here." (<u>Id.</u> at 6). Plaintiff "was instructed to return in a few days for a standard post-operative follow-up visit." (<u>Id.</u>).

On June 16, 2016, Plaintiff saw Defendant for a post-operative follow-up visit. (<u>Id.</u> at 7). Plaintiff complained of "some itching, pain, tearing, and the presence of a foreign body

3

1  sensation." (Id.). Plaintiff "remained on Ketorolac, Prednisolone, and artificial tears, and Dr.
2  Yaplee had started the patient on a combination Neomycin, Polymyxin, and Dexamethasone
3  eyedrops (colloquially referred to within the ophthalmologic community as 'Neo/Poly/Dex') to
4  further address inflammation and swelling in the left eye." (Id.). At this time, Plaintiff was not
5  exhibiting any signs of a post-operative infection. (Id.). Plaintiff "was set to return for follow-
6  up in the standard 2-3 weeks." (Id.).

7      Plaintiff saw Defendant again on July 7, 2016. (Id.). Plaintiff "complained of pain and
8  blurry vision in the left eye. Dr. Yaplee examined the eye and noted there was no redness, no
9  itchiness, and no drainage in the left eye – findings that, if present, would be potential signs of
10  an intraocular or extraocular infection in the left eye." (Id.). Defendant does not recall Plaintiff
11  requesting pain medication, and denies that he made the statements alleged by Plaintiff in his
12  complaint. (Id.). Defendant felt that Plaintiff was doing well, and "elected to continue with the
13  prior medication regimen." (Id. at 7-8). Plaintiff "was told to return to the clinic for further
14  follow-up in a month." (Id. at 8).

15      Plaintiff saw Defendant again on August 18, 2016. (Id.). Plaintiff "complained of
16  blurry visual acuity, although his visual acuity measurements all remained the same for the
17  prior two visits." (Id.). Plaintiff was doing well, and Defendant's "plan was to try to begin to
18  taper the patient off of the Prednisolone medication. [Defendant] was planning to continue the
19  patient on with his Ketorolac, Neo/Poly/Dex, and his artificial tears." (Id.). Defendant also
20  sent Plaintiff "to an optometrist for evaluation for reading glasses." (Id.).

21      Plaintiff saw Defendant again on September 16, 2016. (Id.). "Dr. Yaplee had been
22  contacted that day by Dr. Robles from the North Kern State Prison infirmary and informed that
23  Mr. Washington had a 'Dellen', which is an excavation, often in the periphery of the cornea,
24  that can be frequently seen after pterygium surgery[.] A Dellen can be painful, but it is not an
25  infectious process and is something that can still occur even with artificial tear usage. Dr.
26  Yaplee told Dr. Robles to continue the patient's medication, tape the eye down, and send the
27  patient to his office for evaluation." (Id.) (citation omitted). After Defendant evaluated
28  Plaintiff that day, Defendant determined that Plaintiff had a "scleral melt," not a Dellen. (Id.).

A scleral melt is not an infectious process. (Id.). "The development of a scleral melt is a known side effect of the usage of Mitomycin during a pterygium removal procedure[.] Dr. Yaplee's examination of Mr. Washington's eye in the office that day found redness, but no signs or symptoms of an infectious process like thick discharge from the eye." (Id.) (citation omitted). "Dr. Yaplee's plan was to continue the patient with eye patching, increase the Prednisolone, increase the artificial tears and lubricant ointment, and discontinue the Ketorolac for the patient. Dr. Yaplee discussed with the patient the possibility of a conjunctival patch graft to potentially cover the scleral melt and asked Mr. Washington to return to see him in 1-2 weeks." (Id. at 9)

Plaintiff saw Defendant again on September 29, 2016. (Id.). Defendant examined Plaintiff. (Id.). Plaintiff did not have an ongoing infectious process, but his "scleral melt remained present and [his] visual acuity had decreased from prior visits." (Id.). Additionally, Plaintiff had now developed a Dellen. (Id.). There was also such a significant amount of inflammation that Defendant asked Plaintiff "whether or not he had a history of rheumatoid arthritis, lupus, or some other underlying autoimmune systemic disorder as it would explain the large amount of inflammation seen in the eye." (Id.). Plaintiff "stated he was not aware of any such condition." (Id.). Defendant "re-started the Neo/Poly/Dex to pamper and lubricate the left eye. Dr. Yaplee also increased the frequency of usage of the artificial tears and the Prednisolone for Mr. Washington (in addition to requesting that he wear his eye patch on a 24/7 basis) in response to the development of the Dellen[.] He requested that Mr. Washington return to his office in two to three weeks." (Id.) (citations omitted).

Plaintiff saw Defendant for the final time on October 27, 2016. (Id.). Plaintiff's Dellen had healed efficiently, and the scleral melt had decreased. (Id. at 9-10). However, Plaintiff's "visual acuity in the left eye had decreased to hand motion (which occurs when a patient is only able to make out broad movement of a hand waiving in front of the eye but no other details). He complained of the presence of floaters. Dr. Yaplee remained somewhat puzzled about the significant amount of inflammation he saw in the eye on examination, and he again asked Mr. Washington if he had an underlying autoimmune condition. He again claimed ignorance of any

5

such condition." (Id. at 10). Defendant also "noted the presence of optic nerve edema, which he thought was also highly suggestive of some other kind of underlying inflammatory systemic process." Defendant ordered labs "with the hope that the results would allow for [him to] potentially isolate the underlying cause or etiology of the patient's left eye inflammation." (Id.). Defendant also asked Plaintiff to taper down his Prednisone and to continue using artificial tears. (Id.). As Defendant did not have any further professional interactions with Plaintiff, he was never able to follow-up on the results of the labs. (Id. at 17-18).

Defendant argues that "all aspects of the care and treatment rendered to plaintiff Robert Washington from September 17, 2015 through October 27, 2016 by Dr. Yaplee met the applicable standard of care." (Id. at 13).

Defendant further argues that he was never "deliberately indifferent to any serious medical need(s) that plaintiff may have had." (Id. at 18). Defendant always provided care when he saw Plaintiff, and "[a]ny time that Mr. Washington had complaints regarding his eye, Dr. Yaplee attempted to address those complaints with treatment." (Id.). He never failed to treat a serious medical need that Plaintiff had. (Id.). Additionally, Defendant never delayed treatment for Plaintiff's eye, and "there was never any 'delay' in the care that Dr. Yaplee provided to him that led to further injury or harm." (Id.).

In support of his motion, Defendant submits, among other things, his declaration and medical records related to the care Plaintiff received for his left eye.

      b.  <u>Plaintiff's Opposition (ECF No. 45)</u>

Plaintiff filed his opposition on July 7, 2022. (ECF No. 45). At times Plaintiff's opposition is difficult to understand. What follows is the Court's best understanding of Plaintiff's opposition.

Plaintiff argues that genuine disputes of material fact preclude summary judgment. (Id. at 2).

Plaintiff alleges that while Defendant denies the existence of an infection or any infectious process during the period he provided care to Plaintiff, Defendant reluctantly prescribed an antibiotic to Plaintiff on October 27, 2016, after Plaintiff stated that he was going

6

to seek a second opinion. (Id. at 3). While Defendant asserts that the antibiotics were not for the purpose of treating an infection, Defendant does not present any other prospective medical ailment that existed to warrant prescription of an antibiotic. (Id. at 3-4). And, antibiotics are specifically prescribed to treat infections. (Id. at 4). Moreover, numerous pieces of evidence show that Plaintiff had an infection and that Defendant was aware of it. (Id. at 4-7 & 10-12). Defendant's position that Plaintiff did not have an infection is "disingenuous and plainly false." (Id. at 13).

Plaintiff argues that the evidence shows he had an apparent and obvious infection, which endangered his health and eyesight in his left eye, but Defendant denied Plaintiff antibiotics and delayed in prescribing Plaintiff antibiotics. (Id. at 7-8). Plaintiff was not prescribed antibiotics until after his retinal detachment and accompanying blindness were irreversible conditions. (Id. at 8). Defendant turned his back on Plaintiff and refused to render even slight care. (Id.). Plaintiff suffered from infection(s) and unnecessary extreme pain for months before receiving any care or treatment from his new doctor. (Id. at 9).

Plaintiff argues that, given the evidence he presents, there is a genuine dispute of fact regarding the existence of infection(s) that precludes entry of summary judgment, and this is the central issue in the suit. (Id.). Additionally, this issue is directly related to, and inseparable from, other critical issues, including causation, culpability, and liability. (Id.).

Plaintiff also cites to other cases in which Defendant was allegedly deliberately indifferent to his patients' serious medical needs. (Id. at 12). Plaintiff argues this pattern of conduct can be used to show that Defendant acted with deliberate indifference here. (Id. at 16).

Plaintiff argues that Defendant took an easier and less efficacious route of treatment that resulted in injury to Plaintiff. (Id. at 13).

Plaintiff argues that his symptoms, which were obvious, showed that he had an infection. (Id. at 14). He had inflammation, abnormal secretions, Uveitis, and a cataract, all of which are signs of an infection. (Id. at 14 & 5-7).

Finally, Plaintiff alleges that Dr. Tawansy, the doctor who treated Plaintiff after Defendant, concluded that Plaintiff's blindness stems from retinal detachment and other

medical conditions that were caused by a post-surgery infection.  (Id. at 15).  Plaintiff argues that this medical opinion creates a genuine dispute of material fact.  (Id.).

In support of his opposition, Plaintiff submits, among other things, medical records related to the care he received for his left eye.

         c.   <u>Defendant's Reply (ECF No. 46)</u>

Defendant filed his reply on July 19, 2022.  (ECF No. 46).  Defendant argues that Plaintiff failed to present any admissible evidence showing that Defendant acted with deliberate indifference, that Plaintiff failed to refute any of the material facts included in Defendant's motion, and that Plaintiff failed to present any expert testimony to controvert Defendant's expert testimony.  (Id. at 1).  "Instead, Plaintiff relies on his own lay opinions and beliefs about the appropriateness of his medical care and treatment, which are inadmissible for the purposes of establishing that there was any deviation from the standard of care by Dr. Yaplee or a causal link between Dr. Yaplee's actions and the Plaintiff's claimed injuries."  (Id. at 1-2).

Defendant also argues that Plaintiff cannot cite to allegations in his complaint to create a genuine dispute of material fact.  (Id. at 3-4).

As to the medical records provided by Plaintiff, Defendant argues that they are not properly authenticated.  (Id. at 4).  However, even if they were, "[t]hat Plaintiff ostensibly had an infection at some point in time after he treated with Dr. Yaplee in no way establishes that Dr. Yaplee somehow refused to treat Plaintiff for an infection or ignored his medical needs.  Further, to the extent that Dr. Tawansy chose different treatment options or made different diagnoses of Plaintiff's condition is also insufficient to create a triable issue of fact.  A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs."  (Id.).

Citing to California state court cases, Defendant also argues that "[w]hether the standard of care in a community has been breached can only be proved by expert opinion testimony unless the medical question is within the common knowledge of laypersons.  Due to the inherent nature of a claim involving deliberate indifference to a serious medical need, which will involve an inquiry into the adequacy of the treatment rendered and the applicable

standard of care, this determination is beyond the competency of a lay person and therefore may be proven only by expert testimony. Further, expert opinion testimony is essential to establish causation in a medical negligence claim." (Id. at 5-6) (citations omitted). Defendants argue that a decision regarding the treatment at issue in this case, including whether to prescribe antibiotics, "is not the kind of determination that is considered inherently within the knowledge of a lay person." (Id. at 5). Moreover, Plaintiff failed to provide any expert testimony, while Defendant did provide expert testimony. (Id. at 6).

Finally, Defendants argue that "California courts have held that where a defendant's expert testimony is uncontradicted, there is no triable issue of fact for the jury to consider, and the defendant must prevail as a matter of law." (Id. at 6). As Plaintiff failed to provide expert testimony, Defendant's expert testimony is considered conclusive. (Id. at 7).[2]

  d. Discussion

    i. *Legal Standards for Summary Judgment*

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

---

[2] To the extent Defendant's reply raises new arguments, the Court need not address those arguments. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255.

        ii. *Legal Standards for Eighth Amendment Claims for Deliberate Indifference to Serious Medical Needs*

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992))

(citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

       iii. *Plaintiff's Failure to Respond to Defendant's Separate Statement of Undisputed Facts*

Defendant is correct that Plaintiff failed to respond to his Separate Statement of Undisputed Facts. However, Plaintiff submitted evidence in support of his opposition. Additionally, Plaintiff cited to numerous pieces of evidence in his opposition. Accordingly, the Court will not treat all facts in Defendant's Separate Statement of Undisputed Facts as true on the ground that Plaintiff failed to respond. Instead, the Court will consider the evidence

submitted by Plaintiff.  See Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) ("[A]n ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules.  *Pro se* inmates are, however, expressly exempted from this rule….  We have [] held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly.") (citations omitted).

                iv.  *Analysis*

It is undisputed that Plaintiff received care for his left eye, including medications and surgery.  However, Plaintiff alleges that he did not receive treatment for his eye infection.  Defendant alleges that Plaintiff did not receive care for his infection because Plaintiff was not exhibiting signs of an infection.  In making this argument, Defendant appears to concede that an eye infection requires some sort of prompt treatment.  Plaintiff alleges that he did not receive care for his infection because of Defendant's deliberate indifference.

Thus, the issue before the Court is: did Plaintiff submit sufficient evidence to create a genuine dispute of material fact regarding whether he had an eye infection, and if he did, did Plaintiff submit sufficient evidence to create a genuine dispute of material fact regarding whether Defendant was aware of the infection.[3]  The Court finds that Plaintiff submitted sufficient evidence to create a genuine dispute of material fact as to both, and will thus deny Defendant's motion for summary judgment.[4]

Plaintiff is not a qualified medical expert and thus cannot provide medical expert testimony.[5]  However, in his verified complaint, Plaintiff alleges that when he saw Defendant on September 16, 2016, Defendant "became extremely agitated and began treating plaintiff as a

---

[3] In his motion for summary judgment, Defendant does not argue that, even if Plaintiff had an eye infection, he did not have a serious medical need for treatment.  Thus, Plaintiff was not required to submit evidence to show that his eye infection was a serious medical need.  Additionally, Defendant does not argue that he provided Plaintiff with treatment for an eye infection before October 27, 2016.

[4] To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on evidence it considered to be admissible.  Generally, it is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment.

[5] Under Rule 702 of the Federal Rules Evidence, "only relevant and reliable expert opinion testimony is admissible."  U.S. v. Sandoval-Mendoza, 472 F.3d 645, 654 (9th Cir. 2006).  Expert testimony "is reliable if the knowledge underlying it 'has a reliable basis in the knowledge and experience of [the relevant] discipline.'" Id. (alteration in original) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999)).  "A trial court should admit medical expert testimony if physicians would accept it as useful and reliable." Id.

nuisance. Upon defendant's first sight of plaintiff he said 'what the hell are you doing here? I told them not to send you.'" (ECF No. 9, p. 7) (errors in original). Defendant then "verbally acknowledged that Plaintiff had an eye infection and needed antibiotics. After making this diagnoses [sic], however, defendant said to plaintiff 'you can get those from that asshole who sent you here.'" (Id.). Defendant then told the transport officers to "get [Plaintiff] the hell outta here" and walked out of the reception area. (Id.). Plaintiff saw Defendant again on September 29, 2016, and Defendant once again failed to prescribe antibiotics. (Id.). Thus, Plaintiff submitted evidence that he had an eye infection and that Defendant was aware of the infection.[6]

Defendant argues that "Plaintiff cannot rest on his pleadings and must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial." (ECF No. 46, p. 3). However, in this instance, Defendant is incorrect. The assertions summarized above are related to the existence of, and Defendant's knowledge of, Plaintiff's eye infection, are not conclusory, are based on Plaintiff's personal knowledge, and were made under penalty of perjury. Accordingly, these assertions are admissible evidence that can be considered at summary judgment. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (When a plaintiff is *pro se*, courts may consider contentions in his or her verified pleadings as evidence "where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence").

As to Defendant's argument that he is entitled to summary judgment because Plaintiff failed to provide expert testimony, Defendant cites to cases from California state courts regarding state law claims of negligence. Defendant fails to cite to any controlling cases suggesting that expert testimony is required in all Eighth Amendment deliberate indifference

---

[6] Defendant argues that the medical records relied upon by Plaintiff are not properly authenticated. (ECF No. 46, p. 4). As the Court does not rely on the medical records submitted by Plaintiff in resolving the motion for summary judgment, the Court need not address the issue. However, the Court notes that Defendant does not challenge the authenticity of the medical records submitted by Plaintiff. Moreover, at least some of the medical records are Bates Stamped (see, e.g., ECF No. 45, pgs. 21, 57, 59, & 61), and thus appear to have been provided to Plaintiff by Defendant. Finally, Defendant and Dr. Tawansy may be called as witnesses to authenticate and explain their own medical records.

cases, and the Court is aware of no such cases. Moreover, at least some courts "have concluded that expert testimony is not mandatory to prove a deliberate indifference claim; in some cases, a layperson can adequately understand the evidence such that expert testimony is not required. *See, e.g.*, *Sanders v. York*, 446 F. App'x 40, 43 (9th Cir. 2011) (deliberate indifference claim did not require expert testimony); *Gordon v. Washington*, No. CV-09-05069RBL, 2010 U.S. Dist. LEXIS 33134, 2010 WL 1406166, at *1-2 (W.D. Wash. Apr. 2, 2010) (unlike medical malpractice, expert testimony is not required to establish deliberate indifference claim)." Beitman v. Correct Care Sols., 2021 WL 7257723, at *3 (D. Ariz. Oct. 26, 2021). Here, Defendant appears to concede that if Plaintiff had an infection, it would be unreasonable care to ignore that infection. Defendant's expert, who is Defendant himself, bases his opinion about the reasonableness of his medical care on the understanding that Defendant did not know of any such infection. However, this fact is disputed. Therefore, Defendant's argument that he is entitled to summary judgment because Plaintiff failed to provide expert testimony is not persuasive because the relevant dispute is one of fact that can be resolved with lay testimony—i.e., whether Plaintiff had an infection that Defendant in fact recognized—rather than with expert testimony.

Based on the foregoing, the Court finds that there is a genuine dispute of material fact regarding whether Plaintiff had an eye infection and whether Defendant was aware of the infection. Therefore, the Court will deny Defendant's motion for summary judgment.

**IV.   ORDER**

Accordingly, based on the foregoing, IT IS ORDERED that Defendant's motion for summary judgment is DENIED.[7]

IT IS SO ORDERED.

Dated:   **October 13, 2022**          /s/ Erica P. Grosjean
                                                UNITED STATES MAGISTRATE JUDGE

---

[7] The Court reminds Defendant that he has fourteen days to "file an updated report regarding whether Defendant wants the Court to set a settlement conference." (ECF No. 34).